THE PEOPLE OF THE STATE OF NEW YORK ex rel. BURD R. ATKINS, Respondent, *v.* EDGAR S. JENNINGS, as Warden of the State Prison at Auburn, Appellant.

**Habeas corpus — prisoners — effect of commutation by Governor of determinate to indeterminate sentence — procedure upon violation of condition of commutation — condition that he shall not commit another felony violated by commission of felony in another State — proof of commission of larceny without proof that act would constitute felony in this State insufficient to show violation — entire question of right to discharge or liability to recommitment before court on habeas corpus — breach of condition must be established to justify recommitment — right to recapture not affected by expiration of full term for which commuted prisoner had been sentenced.**

1. Commutation by the Governor of a determinate to an indeterminate sentence does not entitle the prisoner to his immediate discharge but he is enabled thereby to apply therefor to the State Board of Parole. (Prison Law, § 214; Cons. Laws, ch. 43.)

2. The procedure under sections 215–217 of the Prison Law for declaring a paroled prisoner delinquent, does not apply to the case of one who has become an escaped convict by violating the condition of his commutation. His rights are defined by sections 696 and 697 of the Code of Criminal Procedure and he may not be retaken merely as a delinquent paroled prisoner by order of the Parole Board.

3. A prisoner whose sentence has been commuted by the Governor on condition that he shall not commit another felony is properly shown to be an escaped convict, who may be recaptured without a new award of execution and confined under the original judgment, by proof that he has committed a felony in another State. A contention that conviction of felony outside the State of New York does not constitute a breach of the condition imposed by the Governor in his commutation cannot be sustained.

4. Where, however, the record of a hearing on return to a writ of habeas corpus shows merely that the relator, a conditionally commuted prisoner, had committed larceny in another State and there is nothing to show that the act constituting such offense would be a felony if done in this State, the record fails to establish a violation of the conditional commutation.

5. Although the proper procedure to be followed with one charged with violation of a conditional commutation is indicated by sections 696 and 697 of the Code of Criminal Procedure, where the person so charged comes into court on a writ of habeas corpus, granted on his own application, he submits to the court the whole question of his right to a discharge or his liability to a recommitment. On this hearing the defendant may also produce evidence of all the facts which might justify him in holding the relator, but breach of condition must be established to justify a recommitment.

6. A contention that a conditionally commuted prisoner who violates the conditions of his commutation may not be recaptured after the expiration of his full term cannot be sustained. An escaped convict may not go free merely because he avoids arrest until the expiration of the term for which he was sentenced. (*People ex rel. Kohler* v. *Kidney*, 183 App. Div. 921; affd., 223 N. Y. 666, distinguished.)

*People ex rel. Atkins* v. *Jennings*, 222 App. Div. 97, affirmed.

(Submitted March 26, 1928; decided May 1, 1928.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 25, 1927, which reversed an order of Special Term dismissing a writ of habeas corpus, sustained the writ and directed the discharge of the relator from custody.

*Albert Ottinger, Attorney-General (Almon W. Burrell* of counsel), for appellant.

*Burd R. Atkins,* respondent in person.

POUND, J.   On the 15th day of March, 1905, relator, having been convicted of manslaughter, first degree, in the Supreme Court, Genesee county, was sentenced to be imprisoned in the State Prison at Auburn for the determinate term of twenty years.   This term would expire on or about the 15th day of March, 1925, subject to earned commutation for good behavior.

The Constitution of the State of New York (Art. IV, § 5) provides: " The Governor shall have the power to grant * * * commutations * * * after conviction * * * upon such conditions and with such restrictions and limitations as he may think proper * * *." . This power is not subject to legislative limitations.

On or about May 22, 1914, relator's sentence was commuted by the Governor to an indeterminate term of nine years, two months and five days minimum, to twenty years maximum, upon " the express condition that if the said Burd R. Atkins shall hereafter be convicted of any felony, committed during the period between the day of his discharge by reason hereof and the date of the expiration of the full term hereby commuted, he shall be deemed an escaped convict.   With respect to the said commuted term and in addition to the penalty which may be imposed for the felony committed during the period aforesaid he shall be compelled to serve in the prison or penitentiary in which he may be confined for such felony, or, if not confined therefor in any prison or penitentiary, in the Clinton State Prison for the portion of the term hereby commuted now remaining unserved without deduction or commutation for good behavior."   He was discharged from prison by the State Board of Parole on his application on June 2, 1914.   It does not appear that his sentence was commuted because he had earned a commutation and was allowed to go outside the prison walls on parole under the provisions of section 242 of the Prison Law applicable to earned commutations.   Such may have been the fact but the record does not disclose it.

Relator left the State of New York in 1915 and went to Ohio. In 1924 he was convicted of the crime of larceny in the State of Michigan before the expiration of the maximum term of his sentence, and sentenced to imprisonment and imprisoned in the Michigan State Prison for a term of from two to five years. On or about October 30, 1926, after the expiration of the term of the original sentence, on his discharge from the Michigan prison, he was brought back to the State of New York as a fugitive from justice subject to interstate rendition. While it does not appear that the rendition proceedings were regular, he was in fact brought into the jurisdiction of this State. (*Ker* v. *Illinois,* 119 U. S. 436.) He was then detained by the warden under the original judgment of conviction for the unexpired term of the original sentence. He sued out a writ of habeas corpus. In his petition he set forth that he is held " under color of a fracture of the conditional commutation, having seized his body " without due process of law *after the expiration of the original sentence.* The return set forth the original judgment, the conditional commutation, the release, the subsequent conviction and the further allegation that the relator had been, on November 8, 1926, declared delinquent by the Board of Parole for State Prisons as provided by section 217 of the Prison Law. The relator admits his original conviction and his conditional commutation. He denies that he was discharged *on parole* and that he has violated the conditions of his commutation. The Special Term held that the change from a definite sentence to an indefinite sentence presupposed the implied condition that the convict would be released under the jurisdiction of the Board of Parole, dismissed the writ and remanded the prisoner. The Appellate Division reversed and ordered his discharge.

The change from a determinate to an indeterminate sentence did not entitle the prisoner to his immediate

4

discharge. Some authority had to fix the date thereof. He was thereby enabled to apply therefor to the State Board of Parole. (Prison Law [Cons. Laws, ch. 43], § 214.) Clearly that was what the Governor had in contemplation when he commuted the sentence; otherwise he would have ordered the discharge of the prisoner forthwith.

Whether the Board of Parole in discharging relator attached other conditions to his release than those con- tained in the commutation of sentence does not appear. In the view that we take of the case it is immaterial whether it did or did not, or whether it had power thus to limit the conditions of the commutation. If relator had been discharged as a paroled prisoner, subject to the jurisdiction of the Parole Board, he would be allowed to go upon parole outside of the prison walls, only " *upon such terms and conditions as said board shall prescribe, but to remain, while so on parole, in the legal custody and under the control of the agent and warden of the State prison from which he is so paroled* " until the expiration of his maximum term or his absolute discharge. He might be declared delinquent for violation of his parole, arrested and imprisoned for a period equal to the unexpired maximum of his sentence at the time of such delinquency. (Prison Law, §§ 215–217.) On the hearing it was stated that relator was declared delinquent by the Parole Board for failure to report on June 21, 1915, but I find nothing in the record to establish that fact. In any event he was declared delinquent on November 8, 1926, after his recapture and a hearing before the Board, for violating the conditions of his commutation. The earlier so-called delinquency was not the cause then assigned for his recapture.

This procedure under the provisions of the Prison Law, with its implication of wide discretion in the Parole Board in declaring delinquency, does not apply to the case of one who has become an escaped convict in the eyes of the law by violating the condition of his commutation.

His rights are more explicitly defined. (Code Crim. Pro. §§ 696, 697.) He may not be retaken merely as a delinquent paroled prisoner by order of the Parole Board.

The question remains whether relator was properly shown to be an escaped convict who might be recaptured without a new award of execution and confined under the authority of the original judgment. (Penal Law, § 1693; Code Crim. Pro. § 696; *Haggerty* v. *People,* 53 N. Y. 476.) The proofs taken at the hearing were informal in their character. We will, however, for the purposes of this proceeding, assume that the relator was convicted of a felony in Michigan although the return merely alleges a conviction of larceny. The point is made that conviction of felony outside the State of New York does not constitute a breach of the conditions imposed by the Governor in his commutation.

A felony is a crime which is or may be punishable by death; or imprisonment in a State prison. (Penal Law, § 2.) The question whether the consequence of any prior conviction under Penal Law, section 2189, relative to indeterminate sentences for felonies is confined to convictions in this State was expressly reserved in *People* v. *Gutterson* (244 N. Y. 243, 251). It has been held that the provision of the Revised Statutes that no person sentenced upon a conviction of felony shall be competent to testify in any case, related only to a conviction in this State. (*Sims* v. *Sims,* 75 N. Y. 466.) The decision was put squarely on the ground that the provision " is found in that part of the Revised Statutes which relates to crimes and their punishment, and is in the nature of an additional penalty [imposed by the State of New York] consequent upon the sentence." The conditional commutation is not a part of the criminal law of the State. It is an act of grace and we may not infer that the Governor intended to allow the prisoner, released on condition that he shall not commit a felony, to cross the State line, commit felonies there and be subject only to the laws

of the sister State. Good behavior, although determined to some extent by local standards, is not a matter of geography to that extent.

With greater force, it is urged that crimes may be felonies in other States which are not felonies in New York within the meaning of the commutation. Relator, it is said, was convicted of larceny. In this State petit larceny is a misdemeanor. The same acts may be a felony elsewhere. Stealing property of the value of more than fifty dollars was in New York, prior to Laws of 1927, chapter 679, a felony punishable by a term not exceeding five years. (Penal Law, §§ 1296, 1297.) Now, if the property is of the value of one hundred dollars or less, the offense is petit larceny. (Penal Law, § 1298.) If the offense for which relator was convicted would be cognizable by our laws as a misdemeanor or not at all, it cannot be included in the standard of crime that the Governor had in mind when the sentence was commuted. The record before us is a blank on the subject. We do not know the nature of the offense for which relator was convicted and we do not know that the acts constituting such offense would be a felony if done in New York.

The record, therefore, fails to establish the violation of the conditional commutation.

The proper procedure to be followed is indicated by the Code of Criminal Procedure, §§ 696, 697. One charged with violation of a conditional commutation should be taken before a magistrate on a warrant issued on a complaint and given an opportunity to show cause why his commutation should not be adjudged void and he remanded to the place of his former imprisonment for the unexpired term of his sentence. The order to show cause should set forth the facts which constitute the violation of the commutation. He should be permitted to plead to the order in writing and he might then attack its legal sufficiency. He would be entitled to a jury trial if he denied any material fact. If the facts were

fully set forth in the relator's petition so that it uncontrovertibly appeared that relator had violated the condition of his commutation and that the inevitable consequences of a hearing would be his recommitment, such hearing might be dispensed with as an idle formality affecting no substantial right. " He was before the court on a writ of habeas corpus granted on his own application, and he thereby submitted to the court the whole question of his right to a discharge or his liability to a recommitment." (*People* v. *Burns*, 77 Hun, 92; affd., on opinion below, 143 N. Y. 665; *People ex rel. Brackett* v. *Kaiser*, 209 App. Div. 722.)

The two methods are not entirely in conflict. Habeas corpus is the method pursued by the prisoner, while the order to show cause is the proceeding against him, but hearing there must be and breach of condition established. The Code of Criminal Procedure indicates the regular and orderly procedure which protects the captive from oppression. Yet the defendant herein might have produced evidence of all the facts on this hearing which might justify him in holding the relator. The record is lacunose in this regard. The admitted facts are insufficient to justify a recommitment. If the same facts and no additional facts were produced before a court or magistrate they would not be a sufficient basis for an adjudication against the relator. On a question so vitally affecting personal liberty, the record should establish that the right to remain outside prison walls had been forfeited. Nothing should be left to surmise or conjecture.

Relator's original main point that he may not be recaptured after the expiration of his full term is without substance. An escaped convict may not go free merely because he avoids arrest until the expiration of the term for which he was sentenced. Escape interrupts service, and the time elapsing between escape and retaking will not be taken into account or allowed as a part of the term. (*Anderson* v. *Corall*, 263 U. S. 193.)

In *People ex rel. Kohler* v. *Kidney* (183 App. Div. 921; affd., 223 N. Y. 666) it was held that under Prison Law, section 217, as it then read, a delinquent paroled prisoner could not be retaken unless his delinquency had been declared by the Board of Parole before the term of his original sentence had expired. This case has no application to one who is retaken as an escaped convict for violation of a conditional commutation.

On the facts shown in this proceeding defendant did not lawfully hold relator in his custody under the original commitment. He was, therefore, entitled to his discharge.

The order should be affirmed.

CRANE, J. (dissenting). I dissent. When it appeared that the relator was convicted and sentenced for larceny to State prison in Michigan for a possible five years, it can hardly be that the crime was a misdemeanor if committed here. If it were the prisoner could have shown it. He remained silent although he had a hearing.

CARDOZO, Ch. J., LEHMAN, KELLOGG and O'BRIEN, JJ., concur with POUND, J., CRANE, J., dissents in memorandum; ANDREWS, J., not sitting.

Order affirmed.